# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# CENTRAL DIVISION

MATTHEW ARMSTRONG                                                                    PETITIONER
ADC #653248

v.                                      4:21-cv-00871-BSM-JJV

DEXTER PAYNE, Director,
Arkansas Division of Correction                                                      RESPONDENT

## PROPOSED FINDINGS AND RECOMMENDATIONS

## INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge Brian S. Miller. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. Your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of this recommendation. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

## DISPOSITION

I.   **BACKGROUND**

Petitioner Matthew Armstrong, an inmate at the East Arkansas Regional Unit of the Arkansas Division of Correction, brings this 28 U.S.C. § 2254 Petition for Writ of Habeas Corpus *pro se*. (Doc. No. 2.) Mr. Armstrong was convicted of first-degree murder and first-degree escape after a jury trial in the Circuit Court of Searcy County, Arkansas. (Doc. No. 6-5 at 90-91.) He was sentenced as a habitual offender to life imprisonment for the murder, enhanced by fifteen years for the use of a firearm in the commission of the offense, and fifty years' imprisonment for

the escape, all to be served consecutively. (*Id*.) The Arkansas Supreme Court recited the evidence in the case as follows:

> According to the evidence presented at trial, police responded to a call from Armstrong about a shooting at approximately 10:00 a.m. on February 27, 2018. When Sheriff Joey Pruitt arrived at the location, Armstrong flagged him down and attempted to give directions to where the shooting had occurred. Pruitt instructed Armstrong to get in the car and observed that he had a lot of blood on his pants and on his hands. After driving through a gate to a nearby farm, Pruitt found [Jessica] Thornton's body behind a Nissan Rogue that was still running, with the hatchback and driver's-side door open. The victim was found facedown with a .45-caliber handgun under her right hand, a black rifle under her legs, and a broken, unlit cigarette in her left hand. The pistol's magazine was also found just above the victim's head. Thornton had a gunshot wound on the back, left side of her head and a large blunt-force-trauma injury to the top of her head. Inside the car, police found a chainsaw, a cell phone, a rifle case, a brown rifle, a spent shell casing underneath the driver's seat, and a live round underneath items on the passenger seat.
>
> In his statement to police, Armstrong claimed that he was working on a nearby barn that was under construction when he heard a gunshot and Thornton yelling, demanding her chainsaw back. He stated that he placed the chainsaw in the rear of the vehicle and walked back toward the barn. Armstrong indicated that Thornton had a pistol in her hand and was waving it around and cursing at him. He then claimed that she went to the rear of her vehicle, retrieved the rifle, and was holding it in one hand while she continued to wave the pistol around with her other hand. Armstrong stated that he was standing approximately eight feet away from Thornton when he looked down for a moment and heard a gunshot. He indicated that he ran to her and grabbed her head. Armstrong did not recall touching the rifle but stated that he may have moved the pistol out of her hand. He did not know why the magazine was ejected from the gun, speculating that he may have hit the release when he moved it away from Thornton. According to Armstrong, he had been in a romantic relationship with Thornton, although they had recently broken up. He stated that they remained on friendly terms, however, and that he had borrowed her chainsaw the day before and had been driving her vehicle.
>
> Special Agent David Small with the Arkansas State Police testified that he was the lead investigator in the case and that the physical evidence found at the scene did not support Armstrong's claim that Thornton had committed suicide. For example, the pistol underneath the victim's right hand was covered in blood, with the exception of one small area near the barrel where there was a void. Small stated that it appeared something had been pressed on that spot. In addition, blood was found on top of the magazine that had been ejected from the pistol. According to Small, this evidence was not consistent with it falling out after the victim was shot. Further, there was blood on one of the live rounds inside the magazine.

>Small also pointed out that there was dirt on and underneath the victim's fingernails on her right hand even though it was on top of the pistol.
>
>Dr. Jennifer Forsyth, the medical examiner who performed the autopsy on Thornton, testified that the victim had two prominent injuries—the gunshot wound and the laceration on her head. Forsyth stated that the gunshot wound was on the back, left side of Thornton's head and had an upward trajectory. She indicated that the gun had to have been at least twelve to eighteen inches away when it was fired because there was no evidence of powder burn on the wound. Forsyth further testified that the laceration, which was so deep that it exposed the skull, was caused by a blow from a blunt object, not by a fall. She explained that the injury from a terminal fall would be much smaller and would not extend to the bone. Accordingly, Forsyth classified the death as a homicide rather than a suicide.
>
>Other evidence presented by the State showed that Armstrong's jeans tested positive for gunshot residue on both legs. Thornton's blood was also found on his jeans and on his shirt. The two shell casings recovered from the scene were determined to have come from the pistol.
>
>With regard to [Armstrong's] first-degree-escape charge, Blake Kelly, who was employed with the Searcy County Sheriff's Office, testified that he was working at the jail on July 14, 2018. As he was opening the gate to move inmates from one area to another, Kelly stated that Armstrong asked for a book. Kelly told him to wait a minute, and as soon as Kelly opened the gate, another inmate threw hot coffee on him, hit him in the chest, and restrained him, dislocating his shoulder in the process. Meanwhile, Armstrong and a second inmate escaped and were picked up at a location arranged by Armstrong and his girlfriend. The escapees were found several days later hiding in a church.

*Armstrong v. State of Arkansas*, 2020 Ark. 309, at 2-4, 607 S.W.3d 491, 494-96.

At trial, Mr. Armstrong asked the circuit court to instruct the jury on lesser-included offenses to first-degree murder, proffering instructions on manslaughter and second-degree murder. (Doc. No. 6-6 at 107-13, 352, 356.) The circuit court denied this request, finding these instructions were inconsistent with Mr. Armstrong's defense of complete denial and also that there was not a sufficient factual basis for giving them. (*Id*. at 109.) Mr. Armstrong also asked the circuit court to admit into evidence selected text messages that had been extracted from two of four cell phones recovered in the case. (*Id*. at 97-103.) The circuit court refused to do so, finding the text messages had not been properly authenticated because they were taken out of context and

3

the forensic examiner was unable to determine whom the phones belonged to or who wrote and received the messages. (*Id*. at 103-04.)

Mr. Armstrong challenged both of these rulings, among others, on appeal. The Arkansas Supreme Court affirmed, holding there was no rational basis for instructing the jury on lesser-included offenses given Mr. Armstrong's defense of complete denial and that there was insufficient evidence to authenticate the text messages. *Armstrong*, 2020 Ark. 309, at 9-13, 607 S.W.3d at 498-500. Mr. Armstrong did not file a petition for post-conviction relief. (Doc. No. 2 at 2.)

In his Petition for Writ of Habeas Corpus, Mr. Armstrong again challenges the circuit court's rulings on the proffered jury instructions and the admissibility of the text messages. (Doc. No. 2 at 5-6, 10.) Respondent Dexter Payne, Director of the Arkansas Division of Correction, counters that Mr. Armstrong's arguments are not cognizable in federal habeas. (Doc. No. 6 at 3.) After careful consideration of Mr. Armstrong's Petition and the Response, I recommend relief be denied. The Petition should be dismissed with prejudice.

## II. ANALYSIS

### A. Lesser-Included Offenses

Mr. Armstrong contends the circuit court's refusal to instruct the jury on lesser-included offenses – particularly the offense of extreme-emotional-disturbance manslaughter – was "reversible error." (Doc. No. 2 at 5, 10.) He argues there was sufficient evidence presented at trial to support this instruction – namely, a threat articulated by the victim, a physical altercation, and the brandishing of a weapon. (*Id*.) *See Bankston v. State*, 361 Ark. 123, 129, 205 S.W.3d 138, 142-43 (2005) (quoting *Kail v. State*, 341 Ark. 89, 94, 14 S.W.3d 878, 880-81 (2000)) (a defendant is not entitled to an instruction on extreme-emotional-disturbance manslaughter unless

4

there is a factual basis showing the defendant killed the victim "in the moment following 'provocation in the form of physical fighting, a threat, or a brandished weapon'").

As Respondent points out, Mr. Armstrong does not assert any violation of his constitutional rights; he merely raises a claim of trial error. Habeas corpus relief is available to a person in custody pursuant to the judgment of a state court "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). In other words, "federal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)). To be sure, it would be difficult for Mr. Armstrong to articulate a constitutional argument on this issue; the United States Court of Appeals for the Eighth Circuit has held that "the failure to give a lesser included offense instruction in a noncapital case rarely, if ever, presents a constitutional question." *Pitts v. Lockhart*, 911 F.2d 109, 112 (8th Cir. 1990), *cert. denied*, 501 U.S. 1253 (1991). Because Mr. Armstrong's challenge to the circuit court's refusal to give a requested jury instruction does not "rise to a level of constitutional significance," *see id.*, it is not cognizable in habeas.

Even if Mr. Armstrong were able to demonstrate a constitutional component to his claim, he would not be entitled to relief. Federal habeas courts are restricted to a "limited and deferential review of underlying state court decisions." *Sera v. Norris*, 400 F.3d 538, 542 (8th Cir. 2005); *Ryan v. Clarke*, 387 F.3d 785, 790 (8th Cir. 2004). Federal courts may not grant habeas relief on a claim that was adjudicated on the merits in state court unless the adjudication of the claim

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Rompilla v. Beard*, 545 U.S. 374, 380 (2005). Under subsection (d)(1), a state court decision is "contrary to" federal law if the state court arrives "at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000); *see also Collier v. Norris*, 485 F.3d 415, 421 (8th Cir. 2007). A state court decision involves an "unreasonable application" of federal law when the state court "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. Under subsection (d)(2), a state court decision is based on an "unreasonable determination of the facts" "only if it is shown by clear and convincing evidence that the state court's presumptively correct factual findings do not enjoy support in the record." *Lomholt v. Iowa*, 327 F.3d 748, 752 (8th Cir. 2003); *see also* 28 U.S.C. § 2254(e)(1) (a state court's factual finding shall be presumed to be correct, and the applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence).

Mr. Armstrong's claim regarding lesser-included instructions was adjudicated on direct appeal by the Arkansas Supreme Court, which held as follows:

> Armstrong did not introduce any evidence to show that he shot the victim but that the murder was committed in self-defense or under the influence of extreme emotional disturbance. Rather, he argued only that Thornton shot herself. We have held that no rational basis exists for giving a lesser-included instruction when the defense to the charge is a total denial of wrongdoing. *See, e.g., Friar v. State*, 2016 Ark. 245, 2016 WL 3346565 (affirming refusal to give lesser-included instructions on first- and second-degree murder where defense was that appellant was not the perpetrator of the shooting); *Brown v. State*, 321 Ark. 413, 903 S.W.2d 160 (1995), *cert. denied*, 524 U.S. 909, 118 S.Ct. 2070, 141 L.Ed.2d 146 (1998) (holding that lesser-included-offense instruction for possession of controlled substance was properly rejected where appellant's entire defense was based on alibi theory); *Doby v. State*, 290 Ark. 408, 720 S.W.2d 694 (1986) (holding that there was no rational basis to give lesser-included-offense instruction where defense was

6

> that of innocence). Thus, the circuit court did not abuse its discretion in refusing Armstrong's proffered jury instructions in this case.

*Armstrong*, 2020 Ark. 309, at 10, 607 S.W.3d at 498-99. Mr. Armstrong does not allege this decision was contrary to or involved an unreasonable application of federal law or that it was based on an unreasonable determination of the facts, nor could he make any such assertion. Accordingly, he is not entitled to relief on this claim.

### B. Text Messages

Mr. Armstrong continues to argue the circuit court erred by refusing to admit into evidence certain text messages purportedly exchanged by him and the victim. (Doc. No. 2 at 5-6, 10.) He says the messages were properly authenticated and helped to show that "a violent confrontation was in the offing."[1] (*Id*.) But as with his first claim, Mr. Armstrong does not assert a constitutional violation or raise any federal question. His contention is an "invitation[] to reexamine evidentiary rulings made by the trial court and affirmed" by the Arkansas Supreme Court. *Bounds v. Delo*, 151 F.3d 1116, 1119 (8th Cir. 1998). Because the issue is purely one of state law, that invitation must be declined. *Id*.; *see also Bailey v. Lockhart*, 46 F.3d 49, 50 (8th Cir. 1995) (per curiam) ("A state court's evidentiary ruling is a matter of state law, and we may examine the ruling in a habeas proceeding only to determine whether the asserted error denied due process.").

Even if Mr. Armstrong had asserted a due process violation in state court and in his pending Petition, his claim would not succeed. "A state court's evidentiary rulings can form the basis for federal habeas relief under the due process clause only when they were so conspicuously prejudicial or of such magnitude as to fatally infect the trial and deprive the defendant of due

---

[1] The messages included threats such as "When I find you, I'm going to show you where I keep this pistol." (Doc. No. 6-6 at 100.)

7

process." *Bounds*, 151 F.3d at 1119 (citing *Parker v. Bowersox*, 94 F.3d 458, 460 (8th Cir. 1996), *cert. denied*, 520 U.S. 1171 (1997)). The circuit court's evidentiary ruling in this case falls far short of this bar. The forensic examiner testified *in camera* that he was only able to extract data from two of four cell phones recovered in the investigation, he did not know whom the phones belonged to or who possessed them prior to his receiving them, he could not authenticate any of the names or numbers in the phones, and anyone could program a name into a phone and assign it to a number. (Doc. No. 6-6 at 97-101.) The circuit court considered this testimony, as well as the fact that the proffered messages were just a few of many extracted from the phones, and found the context insufficient for authentication purposes. (*Id*. at 103.) The Arkansas Supreme Court agreed:

> While Armstrong argues that there was corroboration of certain references in the text messages, we agree with the circuit court that the messages were not properly authenticated. The only evidence that the texts were authored by Thornton was [the forensic examiner's] testimony that her name was programmed on the phone as the sender. Unlike in *Gulley* [*v. State*, 2012 Ark. 368, 423 S.W.3d 569], no testimony or other evidence was presented to corroborate the sender's identity, and there was also no testimony as to the owner of the phone, where it was found, or who possessed it before [the forensic examiner] received it. Further, the circuit court correctly noted that the messages lacked context because they were chosen out of a large number of messages culled from the phones that were examined. Under these circumstances, the circuit court did not abuse its discretion in excluding the text messages at issue.

*Armstrong*, 2020 Ark. 309, at 13-14, 607 S.W.3d at 500. Mr. Armstrong cannot demonstrate error in this ruling, much less an error so prejudicial it would have fatally infected his trial and deprived him of due process. He is not entitled to relief on this claim.

    C.    **Additional Claim**

Mr. Armstrong seeks to supplement his Petition with a claim of ineffective assistance of counsel. (Doc. Nos. 7-8.) This claim is time-barred. Any amendments to a timely filed habeas petition are required to be filed within the one-year limitations period. *See United States v.*

*Craycraft*, 167 F.3d 451, 456-67 (8th Cir. 1999). Proposed amendments submitted beyond this one-year period may be considered only if the amendments "relate back" to the claims raised in the timely filed original petition. *Id*. (citing Fed. R. Civ. P. 15(c)(2)). To relate back, the new claims must have arisen out of the same conduct, transaction, or occurrence from which the original claims arose. *Id*.

In this case, the one-year limitation period began to run on October 27, 2020, which was "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). (Doc. No. 6-2.) This means that Mr. Armstrong's original Petition for Writ of Habeas Corpus, filed September 30, 2021, was timely; however, his proposed amendment, filed January 26, 2022, is not. *Id*. at (d)(1). Moreover, the proposed claim of ineffective assistance addresses counsel's failure to object to an "illegal sentence" on the firearm enhancement. (Doc. No. 8.) This claim does not relate back to the claims of trial error asserted in Mr. Armstrong's original Petition, as it does not arise out of the same conduct, transaction, or occurrence from which those claims arose. *See Mayle v. Felix*, 545 U.S. 644, 650 (2005) (an amendment to a habeas petition does not relate back "when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth").

Additionally, Mr. Armstrong failed to raise his ineffective-assistance-of-counsel claim in state court pursuant to Arkansas Rule of Criminal Procedure 37, "which is the remedy for asserting allegations of ineffective assistance of counsel." *Gray v. State of Arkansas*, 2018 Ark. 79, at 3, 540 S.W.3d 658, 659. Under Rule 37.2(c)(ii), Mr. Armstrong had until sixty days after issuance of the mandate on appeal to pursue post-conviction relief. That time has passed, so any attempt to return to state court and present the claim now would be futile. Thus, even if Mr. Armstrong's

ineffective-assistance claim had been timely filed, it would be procedurally defaulted. *See Murphy v. King*, 652 F.3d 845, 848-49 (8th Cir. 2011) (before filing a federal habeas petition, a state inmate must first "fairly present" the substance of his or her federal habeas claims to the appropriate state courts and exhaust all available state remedies); *Armstrong v. Iowa*, 418 F.3d 924, 926 (8th Cir. 2005) (quoting *Gray v. Netherland*, 518 U.S. 152, 162 (1996)) (if it would be futile for a petitioner to return to the state courts to present his or her claim, "the exhaustion requirement in § 2254(b) is satisfied, but th[is] failure to exhaust 'provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim'").

### III.   CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, a district court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). I find no issue on which Mr. Armstrong has made a substantial showing of the denial of a constitutional right. Accordingly, no certificate of appealability should issue.

### IV.   CONCLUSION

IT IS, THEREFORE, RECOMMENDED that:

1.   Mr. Armstrong's § 2254 Petition for Writ of Habeas Corpus (Doc. No. 2) be DISMISSED with prejudice.

2.   A certificate of appealability not be issued.

DATED this 14th day of February 2022.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE